**WAUKESHA BUILDING CORPORA-TION, Plaintiff,**

v.

**P. W. JAMESON et al., Defendants.**

**P. W. JAMESON, Third-Party Plaintiff,**

v.

**H. K. MORGAN et al., Third-Party Defendants.**

**H. K. MORGAN et al., Third-Party Plaintiffs,**

v.

**ERIE MANUFACTURING COMPANY, Third-Party Defendant.**

Civ. A. No. 985.

United States District Court
W. D. Arkansas,
Hot Springs Division.

Oct. 11, 1965.

Wright, Lindsey & Jennings, Little Rock, Ark., for Morgan and O'Brien.

Smith, Williams, Friday & Bowen, Little Rock, Ark., for Erie Mfg. Co.

JOHN E. MILLER, Chief Judge.

There is before the court the motion of Erie Manufacturing Company, a third-party defendant, to quash the service and dismiss the third-party complaint against it. Initially Waukesha Building Corporation, an Arkansas corporation which owns and operates the Aristocrat Motor Inn of Hot Springs, Arkansas, commenced action against the general contractor, P. W. Jameson Company, a Tennessee company, for alleged defective construction of the Aristocrat Motor Inn. The general contractor, Jameson, with leave of the court, commenced third-party actions against numerous subcontractors, including George W. O'Brien, H. K. Morgan, Barney W. Thompson, Ted H. Turner, Jr., d/b/a Morgan-O'Brien Plumbing and Heating Company, hereafter referred to as O'Brien. O'Brien, with leave of the court, filed a third-party complaint against Erie Manu-

facturing Company which supplied certain valves used in the Aristocrat airconditioning and heating systems. Erie Manufacturing Company is a Wisconsin corporation with its principal place of business in Milwaukee.

On September 17, 1965, a hearing was held on the motion of Erie to quash the service and dismiss the third-party complaint against it. At the conclusion of the evidence adduced by the movant, Erie, and the third-party plaintiff, O'Brien, the motion was submitted and taken under advisement. The court has received and considered briefs by movant and third-party plaintiff O'Brien in support of their respective contentions.

The sole question presented by the motion is whether or not the movant, third-party defendant Erie, has subjected itself to the jurisdiction of the court.

The operative facts with respect to Erie's presence or lack of it in this state are not disputed. Erie is not qualified to do business in Arkansas and has never maintained an office, warehouse or inventory within Arkansas. It does not have soliciting personnel regularly covering Arkansas although it has a sales representative in Dallas, Texas, who makes periodic trips and calls upon persons using products such as Erie's in Arkansas. The products of Erie are normally sold through manufacturers' representatives, and at the direction of its representative shipped directly to the purchaser at the job site, f. o. b. Milwaukee. The manufacturer's representative in the instant proceeding, G. H. Avery Company of Memphis, solicited the purchase order of the valves used in the airconditioning system supplied by Erie from a Memphis contractor, one Yager & Nenon, Inc. The order through Yager & Nenon, Inc., was made by O'Brien, and the order was shipped by common carrier to the job site of the Aristocrat at Hot Springs, Arkansas. O'Brien, as heretofore stated, was a subcontractor to install the plumbing and heating systems, and was made a third-party defendant by the original defendant, general contractor Jameson. O'Brien installed the first set of valves,

manufactured by Erie, in the Aristocrat heating and airconditioning system sometime prior to August 1963. Complaint was made by the owner of the Aristocrat that metal tubing "had blown out of" the valves when subjected to pressure. Sometime in January 1964 an engineer of Erie visited the job site, and after his inspection and examination agreed to supply O'Brien with another complete set of valves to replace the original set received by O'Brien as above stated. It is not necessary for the court to determine the reason for the malfunction of the system. The original valves were returned and the second set supplied by Erie was installed by O'Brien. The difficulty initially observed in the system persisted after the installation of the second set of valves, and Erie supplied an additional or third set of valves and employed a local contractor to install them in January or February 1965. It was subsequently determined that the screws used to mount the motors on the valves were of an incorrect size and additional screws were supplied to the contractor chosen by Erie, and this adjustment was made in April 1965.

The third-party defendant Erie in its brief contends that it is not doing business within the State of Arkansas and has not, by virtue of the conduct outlined above subjected itself to the jurisdiction of this court under the so-called long-arm statute of 1963. In its brief the defendant takes the position that any cause of action asserted against it is related solely to the supplying of the initial valves, and the court's jurisdiction must be determined by a consideration of that transaction only. The defendant Erie thus seeks to isolate the initial supply of valves from all the events that occurred thereafter. O'Brien, however, contends that Erie has subjected itself to the jurisdiction of this court by virtue of (1) Erie's shipping its products directly to the job site at Hot Springs; (2) sending representatives to Hot Springs to confer with and determine the cause of the malfunction in the airconditioning and heating system; (3) bill-

ing and shipping replacement valves directly to the job site at Hot Springs; (4) sending its representatives to Hot Springs to determine and examine the malfunction after the second set of valves were installed which resulted in the installation by Erie through a contractor it employed to install the third set of valves; and (5) sending salaried agents to call on and solicit the trade in Arkansas.

As the court views the issue as made out by the motion and the evidence adduced by the parties, the questions are (a) whether or not Erie is doing business in Arkansas under Ark.Stat.Ann Sec. 27–340 (1962 Repl.); and (b) whether Erie has subjected itself to the court's jurisdiction under the Uniform Interstate and International Procedure Act, Ark.Stat.Ann. Sec. 27–2502 (1962 Repl.).

■ The third-party defendant Erie in its brief contends as a fundamental proposition that the burden is upon O'Brien to establish the jurisdictional facts. With this principle the court is in complete agreement, and no purpose would be served by discussing and analyzing the various citations contained in the defendant's brief in support of this proposition. The defendant in its brief further contends that the first shipment of valves should be isolated from the subsequent events and that Erie has not subjected itself to the jurisdiction of the court by virtue of that shipment either under the general "doing business statute" or under the provisions of the Uniform Interstate and International Procedure Act.

The traditional manner in which foreign corporations subject themselves to the judicial jurisdiction of the state is by virtue of their doing business in that state. All states have enacted legislation granting judicial jurisdiction over foreign corporations which, although doing business within their states, do not qualify and formally submit to the jurisdiction of their courts. The concept of doing business is predicated upon the principle that an individual, partnership or corporation may not go within the geographical boundaries of a state and there transact its business and then withdraw from the state and defeat the citizens of the state bringing the withdrawing party into the state courts. The Arkansas "doing business" statute in Ark.Stat. Ann. Sec. 27–340 (1962 Repl.) provides:

"Any non-resident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution, and Laws of this State as to doing business herein, who shall do any business or perform any character of work or service in this State shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the Secretary of State, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action accrued or accruing from the doing of such business, or the performing of such work, or service, or as an incident thereto by any such non-resident, or his, its or their agent, servant or employee. Service of such process shall be made by serving a copy of the process on the said Secretary of State, and such service shall be sufficient service upon the said non-resident of the State of Arkansas, provided that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff, or his attorney, to the defendant at his last known address, and the defendant's written return receipt or the affidavit of the plaintiff, or his attorney, of compliance herewith are appended to the writ or process and entered in the office of the Clerk of the court wherein said cause is brought."

■ The so-called "doing business" statutes are bottomed upon the defendant's presence with respect to the cause of action sued upon or certain other minimum contacts. As stated in Interna-

tional Shoe Co. v. State of Washington, (1945) 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, as a constitutional minimum it must be shown that the defendant has had at least minimum contacts to render it amenable to the jurisdiction of the courts of a state. The underlying principles are, of course, fair play, reasonable notice and opportunity to defend. What constitutes minimum contacts within a state to render a corporation amenable to the jurisdiction of the courts of that state is far less than the traditional concept of doing business.

In McGee v. International Life Ins. Co., (1947) 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, the defendant Texas corporation, through a reinsurance agreement, mailed a reinsurance certificate to a citizen in California. The insured paid the premiums by mail from California to the corporation's office in Texas. The policy had originally been purchased from an Arizona corporation. Neither corporation had ever had any office, any agent or done any other business in California. The plaintiff beneficiary of the insured California citizen sued defendant Texas corporation in the California state court. Process was served by registered mail at the Texas corporation's principal place of business. The defendant corporation declined to appear and the judgment was entered against it. The plaintiff thereafter brought suit in the Texas court on the California judgment, and the Texas court refused to give full faith and credit. The Supreme Court reversed on the ground that the defendant corporation had sufficient contacts with California to render it amenable to the jurisdiction of the California courts relying upon the International Shoe case. The court at page 223 of 355 U.S., at page 201 of 78 S.Ct. stated:

"It is sufficient for purposes of due process that the suit was based upon a contract which had substantial connection with that State. (Citations omitted.) The contract was delivered in California, the premiums were mailed from there and the in-

sured was a resident of that State when he died."

■ As a constitutional matter the state has a right to prescribe the conditions by which persons, partnerships or corporations may come within its borders in the pursuit of their business interest. The constitutional limitation is grounded upon the principle of some contact by the defendant with the state which seeks to render it amenable to its courts. The Uniform Interstate and International Procedure Act as approved by the Uniform State Law Commissioners, has been adopted in Arkansas, Act 101 of 1963, Ark.Stat.Ann. Secs. 27–2501–2507 (1963 Supp.). This statute in Sec. 27–2502 provides:

"A. Definition of 'person.' As used in this section, 'person' includes an individual or his executor, administrator or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of this State and whether or not organized under the laws of this State.

"B. Personal jurisdiction based upon enduring relationship. A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, this State as to any cause of action.

"C. Personal jurisdiction based upon conduct.

"1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

(a) transacting any business in this State;

(b) contracting to supply services or things in this State;

(c) causing tortious injury by an act or omission in this State;

(d) causing tortious injury in this State by an act or omission outside this State if he regularly

does or solicits business, or engages in any other persistent course of conduct in this State or derives substantial revenue from goods consumed or services used in this State;

(e) having an interest in, using, or possessing real property in this State; or

(f) contracting to insure any person, property, or risk located within this State at the time of contracting."

The underlying theory with respect to the separate provisions which render an out-of-state party amenable to the jurisdiction of the courts of this State under Act 101 of 1963 is some course or act of conduct which suffices to meet the requirement of minimum contacts as set out in the International Shoe and McGee cases, supra. The minimum contacts which may render a foreign corporation subject to service in the courts of the State of Arkansas are (1) transacting any business within this State directly or by an agent; (2) contracting to supply any goods within this State; (3) contracting to supply any services within this State; (4) causing tortious injury within this State by an act or omission within this State; and (5) causing tortious injury within this State by an act or omission outside this State based upon business solicited within this State. Doing these acts does not, of course, render a foreign corporation subject to service of process on any cause of action, but only those which can be tied to the specific provisions of the statute. Additionally this statute provides that contracting to insure any life, property, or risk within the State subjects the insurer to the jurisdiction of the State courts for any controversy growing out of the policy. The only way a foreign corporation can be sued apart from doing these acts is by its actually doing business or having qualified to do business in Arkansas.

In support of its contention that Erie has not subjected itself to service of process under Act 101 of 1963, the de-

fendant in its brief cites and relies upon Erlanger Mills v. Cohoes Fibre Mills (4 Cir. 1956), 239 F.2d 502. In the Erlanger case a North Carolina corporation sought to recover damages for breach of contract from a New York Corporation in the North Carolina federal court. The North Carolina corporation, a manufacturer, purchased rayon from the defendant New York corporation. The order was placed by the North Carolina corporation after a visit of its representatives to the plant of the New York corporation. The court found that the order was accepted in New York and that the goods were sold and shipped f. o. b. New York. The court upon these facts held that the New York corporation was neither doing business in North Carolina nor had it subjected itself to jurisdiction of the North Carolina courts by transacting any business in North Carolina. The court held that the single act of shipping the goods to North Carolina did not suffice to meet the due process minimum contacts requirements to subject the New York corporation to the jurisdiction of the North Carolina courts.

The third party plaintiff O'Brien in support of his contention that Erie has subjected itself to the jurisdiction of this court cites and relies upon Hiersche v. Seamless Rubber Co. (D.Ore.1963), 225 F.Supp. 682, in which a Connecticut corporation shipped its products into the State of Oregon to fill orders solicited by its salesmen. The court, in applying an Oregon statute, which contains a "transaction of business provision," held that the defendant corporation had subjected itself to jurisdiction of the courts for suits growing out of those sales because it had transacted business within the state, although it was not "doing business" in the traditional sense. The Oregon statute, the court stated, is an exact copy of the Illinois statute which was the general basis for the model act which has been adopted in Arkansas.

Neither of these two cases is decisive of the issues as presented in the instant action. The Hiersche case is clearly distinguishable by virtue of the foreign cor-

poration's salesman actively soliciting orders in Oregon. Likewise the Erlanger Mills case is distinguishable, as the only contact it had with the State of North Carolina was the shipment of the goods f. o. b. New York. In the instant action the shipment of the goods by Erie to the job site was but the first act in a continuing related and connected sequence and series of transactions. Other cases cited by the defendant which discuss doing business in the traditional concept likewise are not decisive of the issues in the instant case.

 In the instant matter, the movant, Erie, has subjected itself to the jurisdiction of the courts of this State under Ark.Stat. Sec. 27–2502 for any cause of action growing out of the use of Erie valves in construction of the Aristocrat Motor Inn by virtue of its (a) contracting to supply services and goods within this state through its manufacturers' representative; (b) supplying goods within this state; and (c) its agents and officers transacting business within this State by negotiating and supervising the reinstallation of the third set of valves supplied by Erie in the Aristocrat construction in compliance with its contract with O'Brien.

The court is of the opinion that any one of the above outlined acts would be sufficient under Act 101 of 1963 to render Erie subject to the jurisdiction of the courts of this State with respect to any controversy growing out of the use of its equipment in the Aristocrat construction. Suffice it to say that the minimum contacts requirement in the above situation would be satisfied by virtue of Erie's contracting to supply the first set of valves and its shipment directly to the job site. This single transaction is sufficient under the McGee case to render it subject to the jurisdiction of the courts of this State with respect to any controversy growing out of those goods.

The conduct of Erie with respect to the initial shipment was a continuing and connected transaction. The first shipment cannot be isolated from the over-all transaction. Although the initial shipment of valves by Erie might be a separate transaction in point of time from the subsequent transactions between the parties, it does not immunize Erie from subsequent events and developments growing out of and resulting from the initial shipment. The events subsequent to the initial shipment by Erie, when considered in their proper relationship to the first shipment are sufficient to meet the "doing business" requirement of Ark.Stat.Ann., Sec. 27–340, subjecting foreign corporations to the jurisdiction of the courts of this State.

Therefore, in accordance with the above an order is being entered today denying Erie's motion to quash service on it and overruling Erie's motion to dismiss.