**Billy M. DAVIS dba Davis Cycle Company, Plaintiff,**

v.

**The TRIUMPH CORPORATION, Defendant.**

**No. LR–66–C–20.**

United States District Court
E. D. Arkansas, W. D.

Sept. 12, 1966.

**420**

Jack L. Lessenberry, Little Rock, Ark., for plaintiff.

Don F. Hamilton, Little Rock, Ark., for defendant.

Memorandum Opinion

HENLEY, Chief Judge.

This diversity case is now before the Court on the motion of the defendant to quash service of summons and on a subsequent and more basic motion to dismiss the complaint on the ground that the Court lacks personal jurisdiction with respect to defendant. The motions have been submitted on the record made up in the case as of this time, including affidavits, exhibits, and memorandum briefs.

There is no question of federal subject matter jurisdiction. Plaintiff is an individual citizen of Little Rock, Pulaski County, Arkansas. The defendant is a Maryland corporation, having its principal place of business in the vicinity of Baltimore in that State. Judged by the amount of plaintiff's demand, the sum in controversy, exclusive of interest and costs, is in excess of $10,000.

The record before the Court establishes that from January 1, 1951, to October 1965 plaintiff, Billy M. Davis, doing business under the name of Davis Cycle Company, was a franchised dealer in Triumph motorcycles and parts. During and after 1957 his place of business was located at 2317 Wright Avenue in the City of Little Rock. Prior to August 1965 plaintiff's territory included all of Pulaski County and he had an exclusive franchise in that county.

Triumph motorcycles and motor scooters, and presumably parts and supplies therefor, are manufactured in England. They are distributed in this country by the defendant, The Triumph Corporation. Defendant franchises dealers throughout the country and sells merchandise to them; the dealers in turn sell the merchandise to the motorcycle and motor scooter riding public.

It appears that the franchises are issued on a year to year basis and are terminable at the will of either party on 30 days notice. Franchised dealers agree, among other things, to promote the sale of Triumph products, including parts, to maintain suitable business premises, to stock and display certain described minimum inventories, to maintain and keep in good working order adequate demonstration models, to display prominently the name "Triumph" in approved form inside and outside places of business, and to pay for all merchandise ordered by them.

For its part Triumph undertakes, among other things, to supply to its dealers such merchandise as might be reasonably required by the dealers in the proper conduct of their businesses to the extent that it was able to do so having

due regard for various contingencies referred to in the contract.

The last contract under which plaintiff operated was dated October 23, 1964, and expired by its own terms in October 1965. The formal contract itself is a rather short document, but it recites that supplementary understandings in writing or attached to the formal contract should constitute a part thereof. And the record contains a copy of certain supplementary understandings and explanations, dated October 1963, which supplementary material includes rather detailed requirements and limitations upon the dealer not spelled out in the formal contracts.

The complaint alleges in substance that in the latter part of 1964, presumably after the execution of the October 23 contract, defendant commenced a course of conduct designed to destroy plaintiff's business, terminate the franchise agreement, and deprive plaintiff of his profits. It is alleged that as part of this scheme plaintiff was compelled to agree to a reduction of his territory to the City of Little Rock, a reduction which would take out of his territory the large City of North Little Rock, and the rapidly growing City of Jacksonville near which place is located the Little Rock Air Force Base.

It is further alleged that defendant breached the franchise agreement in a number of ways, including refusal to fill orders for merchandise, favoring competing dealers, failing and refusing to supply plaintiff with adequate information concerning the supply and production of vehicles, refusal to offer adequate assistance in sales promotion and technique, refusal or failure to reply to correspondence and inquiries, setting up a competing business in North Little Rock at a time when plaintiff still had an exclusive franchise covering all of Pulaski County, forcing plaintiff to agree to a

reduction of his territory, and cancelling his franchise after agreeing that he would continue to have an exclusive franchise for the City of Little Rock.

Various items of damage are claimed, and plaintiff's total demand is about $30,000.[1]

Plaintiff filed this suit originally in this Court on February 10 of the current year. Defendant has not qualified to do business in Arkansas and has no agent for service here; plaintiff undertook to get service under the provisions of the Arkansas version of the Uniform Interstate and International Procedure Act, Ark.Stats. § 27–2501 et seq., read in connection with Rule 4(d), of the Federal Rules of Civil Procedure, as amended in 1963.

The complaint having been filed, the Clerk issued summons thereon and delivered the same to counsel for plaintiff. Counsel on the same day addressed a letter to defendant advising that the suit had been filed and enclosing a copy of the summons and complaint. The letter, a copy of which is in the record, indicates that it was transmitted by certified mail, return receipt requested, but no proof of service has ever been made as required by Ark.Stats. § 27–2503 A2. The motion to quash which has been mentioned is based upon the lack of proof of service and also upon the fact that the attorney for a plaintiff is not a proper person to effect service under the Act. The Court before going further will say that the position of the defendant on that particular motion is well taken, and the motion to quash will be granted.

In support of the motion to dismiss for lack of jurisdiction the defendant contends, first, that the Act does not apply to defendant at least as far as this case is concerned, and, second, that to apply it to defendant so as to sustain

jurisdiction would offend due process of law. The first of those contentions raises simply a question of the construction and application of a State procedural statute, a question of State law. The second question is one of federal constitutional law. The answers to the two questions are not necessarily the same in a particular case. This is true because a State may not constitutionally exercise in personam jurisdiction with respect to a litigant in a manner or to an extent prohibited by the 14th Amendment; however, for reasons of its own a State may not choose to go as far as the Constitution permits in the field of the exercise of such jurisdiction. In other words the Constitution sets certain limits beyond which State jurisdiction cannot be exercised, but the State's own limits may be narrower. See Aftanase v. Economy Baler Co., 8 Cir., 343 F.2d 187; Ark–La Feed & Fertilizer v. Marco Chemical Co., 8 Cir., 292 F.2d 197; McAvoy v. Texas Eastern Transmission Co., W.D.Ark., 185 F.Supp. 784; Fritchey v. Summar, W.D.Ark., 86 F.Supp. 391.

The federal constitutional standards for the exercise of in personam jurisdiction by a State with respect to a non-domesticated foreign corporation, such as defendant here, are to be found in cases like International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. See also McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Perkins v. Benguet Consolidated Mining Co., 342 U. S. 437, 72 S.Ct. 413, 96 L.Ed. 485.

█ International Shoe Co. v. State of Washington, supra, the leading case, makes it clear that the right of a State to exercise jurisdiction with respect to a foreign corporation does not depend upon whether it is "doing business" there within the traditional and conservative meaning given to that term. Rather, due process is satisfied if the corporation has "certain minimum contacts with (the forum State) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (326 U.S. at 316, 66 S.Ct. at 158.)

The Court also held that the requirements of due process are met by such contacts between the corporation and the forum State "as to make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." (Ibid at 317, 66 S.Ct. at 158.)

In his recent opinion in the case of Waukesha Building Corporation v. Jameson, W.D.Ark., 246 F.Supp. 183, Judge Miller in speaking of *International Shoe* had this to say (pp. 186–187 of 246 F. Supp.):

"The so-called 'doing business' statutes are bottomed upon the defendant's presence with respect to the cause of action sued upon or certain other minimum contacts. As stated in International Shoe Co. v. State of Washington * * * as a constitutional minimum it must be shown that the defendant has had at least minimum contacts to render it amenable to the jurisdiction of the courts of a state. The underlying principles are, of course, fair play, reasonable notice and opportunity to defend. What constitutes minimum contacts within a state to render a corporation amenable to the jurisdiction of the courts of that state is far less than the traditional concept of doing business."

The International Shoe Co. case was decided in 1945, and at its 1947 session the Arkansas Legislature passed the "long arm statute" which became codified as Ark.Stats. § 27–340 for the rather obvious purpose of taking advantage of the more liberal jurisdictional rule enunciated in that case. However, fifteen years were to pass before the decision of the Supreme Court of Arkansas in Aldridge v. Marco Chemical Co., 234 Ark. 1080, 356 S.W.2d 615, made it clear that the jurisdiction of Arkansas courts with respect to non-qualifying foreign corporations would be exercised in accordance with the principles laid down in *International Shoe* and not in accordance with more restrictive principles laid down in earlier cases. In the interim the federal courts sitting in Arkansas were troubled

more than once as to how far Arkansas would go in asserting jurisdiction under section 27–340. See in this connection this Court's opinion in McAvoy v. Texas Eastern Transmission Co., W.D.Ark., supra, and see the federal district court cases cited in the concurring opinion of Judge Blackmun in Ark-La Feed & Fertilizer Co. v. Marco Chemical Co., supra, 292 F.2d at 205.

Although Arkansas adopted the Uniform Act in 1963, the Supreme Court of Arkansas does not appear to have construed it as yet further than to say that it is remedial and is to be applied retroactively. Safeway Stores v. Shwayder Brothers, 238 Ark. 768, 384 S.W.2d 473.[2] The Court thinks it safe to say, however, that the Arkansas courts will give the Act *International Shoe* construction and application.

Turning now to the statute, section 27–2502 provides basically that the courts of this State may exercise jurisdiction with respect to a natural person or a corporation either on the basis of an "enduring relationship," such as domicile, creation by the State, or maintenance of his or its principal place of business here, section 27–2502 B, or on the basis of "conduct," section 27–2502 C. No effort is made in this case to base jurisdiction on "enduring relationship." Plaintiff relies on jurisdiction based on "conduct."

The relevant portions of section 27–2502 C are as follows:

"C. Personal jurisdiction based upon conduct.

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to (cause of action) (claim for relief) arising from the person's

(a) transacting any business in this State;

(b) contracting to supply services or things in this State;

(c) causing tortious injury by an act or omission in this State;

(d) causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct in this State or derives substantial revenue from goods consumed or services used in this State;

(e) having an interest in, using, or possessing real property in this State; or

(f) contracting to insure any person, property, or risk located within this State at the time of contracting.

2. When jurisdiction over a person is based solely upon this section, only a (cause of action) (claim for relief) arising from acts enumerated in this section may be asserted against him."

■ Whether the Court has jurisdiction of the defendant's corporate person is a mixed question of law and fact, and the burden is upon the plaintiff to show that jurisdiction exists. Waukesha Building Corporation v. Jameson, supra, 246 F.Supp. at 186.

■ In support of his claim of jurisdiction plaintiff relies on affidavits of his own, certain exhibits attached thereto, and the copy of the franchise agreement attached to the complaint as an exhibit. Defendant in challenging jurisdiction relies on two affidavits of its secretary-treasurer. The Court considered those affidavits and exhibits and does not

---

**2.** Several months before the decision in *Shwayder* this Court had reached the same conclusions in Stevens v. Priester Machinery Co., E.D.Ark., N.Div., No. B–63–C–12, March 15, 1964, no opinion for publication. In that case jurisdiction was invoked under both section 27–340 and the Uniform Act. A question arose as to whether the 1963 enactment had repealed by implication the 1947 statute or whether the later measure had so occupied the field that the earlier statute had been rendered obsolete. The Court found it unnecessary to decide that question because it found jurisdiction under the earlier statute and concluded that jurisdiction was present *a fortiori* if the question was to be decided under the Uniform Act.

consider the controlling facts to be in real dispute. As is usual in such cases some facts standing alone are indicative of jurisdiction; others standing alone tend to negative it. All of the facts must be considered together.

■ As has been said, defendant is a Maryland corporation not qualified to do business in Arkansas and not having an agent for service in this State. It maintains no office, place of business, or warehouse here; it does not appear to have any bank account in Arkansas, or any permanent employees residing within the State. It does not make or solicit consumer sales of merchandise or parts in Arkansas or elsewhere for that matter.

Defendant is a distributor of English made products which it receives from abroad and which it ships to dealers, such as plaintiff, in the original crating. Orders placed by dealers are accepted at Baltimore, and the merchandise is shipped FOB that City.

Defendant has never had more than three dealers at most in Arkansas; it had only two when the suit was filed, and it has only two now. During 1963, 1964, and 1965 defendant sold motorcycles to dealers in 31 States and in the District of Columbia, and during each of those years its sales to Arkansas dealers accounted for less than 1 percent of its total revenue.

The facts stated so far would seem to indicate an absence of jurisdiction both from a constitutional and from a statutory standpoint. However, those facts are not all of the facts revealed by the record; nor do they, standing alone, tell the whole story of defendant's contacts or connections with Arkansas.

To start with, the Court is not concerned here with an isolated transaction or with a few transactions separated by substantial periods of time. Whatever Arkansas contacts defendant has had, as far as plaintiff is concerned, went on continuously for a period of about 14 years. During that period of time plaintiff must have purchased thousands of dollars worth of merchandise from de-

fendant, and while the percentage of its total revenues which defendant derived from Arkansas dealers, including plaintiff, may have been very small percentagewise, it by no means follows that those revenues were insubstantial in terms of dollars and cents. It is noted in this connection that defendant's materials supply no dollars and cents figures.

Defendant has regularly had a sales representative call on Arkansas dealers and prospective dealers. This representative has solicited orders from dealers and his solicitations have been systematic. He has done more than solicit orders; he has counselled and conferred with dealers in connection with problems related to their businesses, and he has probably been of assistance in other ways as well. Not only has defendant undertaken to sell merchandise to the plaintiff in this State, but also, at least since 1961, it has sold him merchandise on credit with title being retained by the defendant until the merchandise was paid for.

Defendant has required of plaintiff the maintenance of certain standards of business performance and in some years has shared in plaintiff's local advertising and promotional expense. In this connection it is noted that beginning at least in 1962 and extending into 1965 defendant supplied plaintiff with certain advertising and promotional material, and while plaintiff was charged initially with the entire cost of that material, he was given substantial credits against the price thereof.

The Court has no difficulty in resolving the federal question in this case in favor of plaintiff. In the Court's estimation defendant's contacts with and operations in Arkansas clearly met the minimum contact requirements of International Shoe at least as far as this case is concerned. It is no more unfair or unreasonable to require defendant to defend this case in Arkansas than it would be to require plaintiff to go to Maryland to sue defendant.

If, as here, a foreign corporation chooses to enter into a franchise agree-

ment with a citizen of Arkansas, to sell him merchandise on credit with title retained in the obvious expectation that its security interest in the merchandise will be protected and vindicated by the laws and in the courts of Arkansas, to send a sales representative into the State regularly to solicit orders from the dealer and to counsel and confer with him, and to bear part of his local advertising expense, it is no denial of due process of law to require defendant to answer in the courts of this State a suit brought by the dealer on the very franchise agreement.

With further regard to the applicability of the statute, it seems clear that the complaint sounds in contract although at points it savors of tort. Essentially, the complaint charges breaches of contractual obligations and, apparently, of allegedly implied contractual duties owed plaintiff by defendant. Hence, it must appear that the cause of action is one "arising from" the transacting of business in the State by defendant or "arising from" the defendant's "contracting to supply services or things in this State," or that it arises from both the transacting of business and the contracting to supply services or things in Arkansas.[3]

██ The Court is of the opinion that, in dealing with its franchise for the time and in the manner which have been set forth and described, defendant has been transacting business in Arkansas, and that the suit arises out of the transacting of that business. While controversies and litigation growing out of franchise dealership contracts are not wished for by the parties, they are certainly not unforeseeable when the contracts are made and when performance under them is undertaken.

██ The Court is convinced also that the suit arises in part out of the obligation of the defendant to supply merchandise to the plaintiff.

3. Ark.Stats. § 27–2502 C 1(a) and (b). The Court does not overlook section 27–2502 C 2 heretofore quoted. Frankly, the Court does not see what C 2 really adds to

In sum, the Court finds and concludes that it has jurisdiction under both subdivision (a) and subdivision (b) of section 27–2502 C 1, and the motion to dismiss will be overruled.

Since the defects in the service of summons which have been mentioned can be remedied rather easily, defendant may not care to press the matter, although it is free to do so. Counsel for defendant is directed to advise the Court and opposing counsel within one week from this date as to whether defendant will insist that plaintiff effect a new service.

An order in accordance with the foregoing will be entered.

C 1. Under both C 1 and C 2 the cause of action must "arise from" acts enumerated in C 1; no acts are enumerated in C 2.