Vance M. THOMPSON, Jr.; William Hadley Thompson; W. Dane Clay; W. Dane Clay, Trustee; and R. Mike Butner, Plaintiffs,

v.

ECOLOGICAL SCIENCE CORPORATION, Defendant.

No. LR–68–C–192.

United States District Court
E. D. Arkansas, W. D.

Feb. 6, 1969.

W. Dane Clay and James Guy Tucker, Jr., of Rose, Meek, House, Barron, Nash & Williamson, Little Rock, Ark., for plaintiff.

Louis P. Bickel, Dallas, Tex., Abner McGehee, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

HENLEY, District Judge.

This diversity case is now before the Court on the motion of defendant to dismiss for lack of in personam jurisdiction. The motion has been submitted on the complaint and exhibits thereto, the motion itself, affidavits, and memorandum briefs. The jurisdictional facts are not in substantial dispute.

Plaintiff, Vance M. Thompson, Jr., is a native of Arkansas but presently a citizen of Tennessee; the other plaintiffs, William Hadley Thompson, W. Dane Clay, W. Dane Clay, Trustee, and R. Mike Butner, are citizens of Arkansas. The defendant, Ecological Science Corporation, formerly Southern Gulf Utilities, Inc., is a Florida corporation having its principal place of business in that State. Another corporation involved in the case, Energy Dynamics, Inc., is a Delaware corporation; the location of its principal place of business, if it has one, is not revealed by the record, but it is clearly not in Arkansas. Judged by the amount of plaintiffs' demand the amount in controversy is far in excess of $10,000, exclusive of interest and costs. Thus, federal subject matter jurisdiction is established.

In October 1967 while defendant was still known as Southern Gulf Utilities,

Inc., hereinafter Southern Gulf, representatives of defendant contacted plaintiffs in Arkansas and conducted negotiations which led to the final execution of a written contract and related documents, copies of which are attached to the complaint as exhibits. In a nutshell, the agreement was that a new corporation, to be known as Energy Dynamics, Inc., was to be formed for the purpose of selling a certain patented incinerator under a license from the holder of the patent rights. Southern Gulf was to own 51 percent of the stock in Energy Dynamics, Inc. and plaintiffs were to own 49 percent of the stock. The complaint alleges that defendant breached the contract in a number of respects not to be detailed at this juncture, and plaintiffs claim damages in the sum of $3,000,000.

After the execution of the contract the corporate name of Southern Gulf was changed to Ecological Science Corporation.[1] Southern Gulf never qualified to do business in Arkansas, has never designated an agent for service in this State, and has never "done business" here in the conventional sense of the term. The alleged jurisdiction of this Court is not predicated upon any "enduring relationship" between Southern Gulf and Arkansas. Rather, jurisdiction is based solely upon alleged "conduct" of Southern Gulf in Arkansas.

More specifically, the plaintiffs claim that jurisdiction exists by virtue of section 1, subd. C, par. 1(a) of Arkansas Act 101 of 1963, Ark.Stats.,Ann., § 27–2502, subd. C, par. 1(a), which is part of the Arkansas version of the Uniform Interstate and International Procedure Act. That section provides that the courts of a State, including federal courts

sitting therein, may exercise personal jurisdiction over a person or corporation acting directly or by an agent as to a cause of action arising from the "transacting (of) any business in (the) State" by that person or corporation, provided that the cause of action arises from such transaction of business.[2] And paragraph No. 3 of the complaint alleges that in October 1967 the President and other principal officers of the defendant "came to Arkansas and negotiated with plaintiffs the agreement which is the subject matter of this action." It is further alleged that: "This cause of action arises out of such acts done in Arkansas and accrues from the doing of such business in Arkansas. Therefore, defendant is subject to service of process herein in Arkansas, although it is not qualified to do business in Arkansas."

The position of plaintiff is that Arkansas contacts of defendant, presently to be described in somewhat more detail, were sufficient to bring defendant within the scope of section 27–2502, subd. C, par. 1(a) that the cause of action asserted in the complaint arose out of those contacts so as to satisfy the requirement of section 27–2502, subd. C, par. 2; and that the exercise of in personam jurisdiction with respect to the defendant is constitutionally permissible under the liberal concepts expressed in cases like International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; cf. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

1. Ecology is the branch of the science of biology which deals with the relationships between living things and their environment. Webster's New International Dictionary, 2d Ed., Unabridged, "Ecology." Incinerators designed for the destruction of commercial or industrial wastes may be considered as calculated to improve the air breathed by humans and thus to improve their environment. The words "energy" and "dynamics" both convey the idea of heat; hence, the use of those words in the name of a corporation which is to sell incinerators is appropriate.

2. The proviso actually appears as section 27–2502, subd. C, par. 2.

**1310**

The position of the defendant is that the conduct of its officers in Arkansas was not sufficient to bring the Arkansas statute into play, and, further, that to assert jurisdiction over the defendant under the statute would be violative of the Fourteenth Amendment to the Constitution of the United States.

In Davis v. Triumph Corporation, E.D. Ark., 258 F.Supp. 418, 422, this Court had occasion to say:

"International Shoe Co. v. State of Washington, supra, the leading case, makes it clear that the right of a State to exercise jurisdiction with respect to a foreign corporation does not depend upon whether it is 'doing business' there within the traditional and conservative meaning given to that term. Rather, due process is satisfied if the corporation has 'certain minimum contacts with (the forum State) such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' (326 U.S. at 316, 66 S.Ct. at 158.) The Court also held that the requirements of due process are met by such contracts between the corporation and the forum State 'as to make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.' (Ibid, at 317, 66 S.Ct. at 158.)

"In his recent opinion in the case of Waukesha Building Corporation v. Jameson, W.D.Ark., 246 F.Supp. 183, Judge Miller in speaking of *International Shoe* had this to say (pp. 186–187 of 246 F.Supp.):

"'The so-called "doing business" statutes are bottomed upon the defendant's presence with respect to the cause of action sued upon or certain other minimum contacts. As stated in International Shoe Co. v. State of Washington * * * as a constitutional minimum it must be shown that the defendant has had at least minimum contacts to render it amenable to the jurisdiction of the courts of a state. The underlying principles are, of course, fair play, reasonable notice and opportunity to defend. What constitutes minimum contacts within a state to render a corporation amenable to the jurisdiction of the courts of that state is far less than the traditional concept of doing business.'"

There has not developed as yet any large body of Arkansas case law construing and applying the Act with which the Court is concerned. However, what authority there is makes it clear that the statute will be given a broad and liberal construction, Pennsalt Chemical Corp. v. Crown Cork & Seal Co., Inc., 244 Ark. 638, 426 S.W.2d 417; Safeway Stores v. Shwayder Bros., 238 Ark. 768, 384 S.W.2d 473; and the Court will assume that as a matter of Arkansas law the statute extends to the outer limits permitted by due process.

The question of whether the federal Constitution permits a State to exercise in personam jurisdiction over a nondomesticated foreign corporation has produced a tremendous volume of decisions, and it would be impractical to abstract or discuss even a substantial number of the reported cases. A good collection of them is found in 20 A.L.R. 3d 1201 et seq., the Annotation being entitled "Validity, As A Matter of Due Process, of State Statutes or Rules of Court Conferring In Personam Jurisdiction Over Nonresidents or Foreign Corporations On The Basis of Isolated Business Transaction Within State." That Annotation, in turn, refers to other annotations which are relevant.

There is no touchstone whereby the question of jurisdiction can be decided automatically. Each case must turn on its own facts. As stated by this Court in *Davis,* supra, 258 F.Supp. at 423, whether jurisdiction exists in a given case is a mixed question of law and fact, and the burden is upon the plaintiff to establish jurisdiction. See also Waukesha Building Corp. v. Jameson, supra, 246 F.Supp. at 186.

From the materials before it the Court finds that on October 15 and 16, 1967, at least two principal officers of Southern Gulf came to Little Rock and negotiated with the plaintiffs. As a result of those negotiations the minds of the parties met on the essential terms of the agreement, with it being understood that plaintiffs were to have until October 23 to determine if and where they could raise the money to make the investment required of them by the contemplated contract. On October 17 Mr. Clay prepared a draft agreement and mailed it to Southern Gulf along with a covering letter stating that the contract would become effective upon execution by plaintiffs not later than October 23, and that the funds plaintiffs would be required to invest would be transmitted promptly thereafter. Later Mr. Clay and Mr. Fuller had a telephone conversation and agreed upon some minor modifications of the agreement. On October 23 plaintiffs notified Southern Gulf that they accepted the proposed contract. The contract documents were mailed to Little Rock and were executed by plaintiffs on or about October 26, and were later executed by defendant in Florida. Under date of November 6, executed copies of the documents were transmitted by Mr. Fuller to Mr. Clay.

In Hanson v. Denckla, supra, 357 U.S. 235, at 251, 78 S.Ct. 1228, at 1238 the Supreme Court pointed out that the concept of in personam jurisdiction over nonresidents has "evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95." The Court then went on to make it clear, however, that the expansion of that concept is not to continue *ad infinitum*. The Court said (ibid.):

 " * * * But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362,

1 L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. * * * "

■ There can be no question that negotiations taking place within a given State and looking toward the formation of a contract constitute a significant contact with that State and are a significant factor to be considered in determining whether the nonresident individual or corporation is subject to the jurisdiction of the courts of that State.

Indeed, this Court held quite recently that it had jurisdiction with respect to a foreign corporation which sent an agent into the State to sell franchises covering territory in Arkansas, which agent advertised his presence here, solicited interviews, and made allegedly fraudulent representations in this State, even though the actual franchise agreement which was the subject of the suit was made in another State. Stevens v. Computer Credit Systems, Inc., E.D.Ark., Docket No. LR–68–C–173 (unpublished letter opinion to counsel).

■ In this case, however, the Court is not persuaded that the contract negotiations and other Arkansas activities which have been described were sufficient to constitute "minimum contacts" constitutionally necessary to warrant the exercise of in personam jurisdiction with respect to the defendant.

Regardless of whether from a conflict of laws standpoint the contract was "made" in Arkansas or whether it was "made" in Florida, it is clear that the subject matter of the agreement had nothing to do with Arkansas except that, of course, Energy Dynamics might ultimately sell incinerators in this State as well as in others. Energy Dynamics

was not to be organized as an Arkansas corporation, its books and records were not to be kept here, its stock was not to be issued in this State; it was not to be subject to the regulatory authority of Arkansas. It was not contemplated that Energy Dynamics would open or maintain any place of business in Arkansas or that the incinerators would be produced here. No security instruments were to be filed here, no property was to be acquired in Arkansas, and no corporate funds were to be deposited in Arkansas banks.

In their capacity as stockholders of Energy Dynamics plaintiffs were not required to do anything in Arkansas. Nor in coming to Arkansas to negotiate did the officers of the defendant invoke any privilege conferred by Arkansas law. The controversy between the parties can be litigated as well in Florida as here, perhaps better; and there is nothing in the record to indicate that it will impose any undue hardship on plaintiffs to prosecute their very large claim against the defendant in the courts of Florida.

As stated, the burden is upon the plaintiffs to show that jurisdiction over the defendant exists, and the Court does not find that the burden has been discharged.

In his statement in opposition to the motion to dismiss counsel for plaintiffs has cited National Gas Appliance Corp. v. AB Electrolux, 7 Cir., 270 F.2d 472, and Temco, Inc. v. General Screw Products, Inc., M.D.Tenn., 261 F.Supp. 793. While there is language in both of those opinions tending to sustain plaintiffs' position, a consideration of the entirety of the facts in both cases makes it clear that in both the foreign corporations sought to be held had more extensive and significant contacts with the forum State than are present here.

An order will be entered granting the motion and dismissing the complaint without prejudice for lack of in personam jurisdiction.