**CONTINENTAL OIL COMPANY, a corporation, Stearns-Roger Corporation, a corporation, and National Fire Insurance Company of Connecticut, a corporation, Plaintiffs,**

v.

**ATWOOD & MORRILL COMPANY, a corporation, Defendant.**

**Civ. No. 608.**

United States District Court
D. Montana,
Billings Division.
Feb. 27, 1967.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for plaintiffs.

Anderson, Symmes, Forbes, Peete & Brown, Billings, Mont., for defendant.

## ORDER AND MEMORANDUM OPINION

JAMESON, Chief Judge.

The defendant has moved to quash service of summons and dismiss for want of jurisdiction, or alternatively, for a change of venue. Defendant, a Massachusetts corporation, was served with summons and complaint at its principal place of business, in Salem, Massachusetts, pursuant to Rules 4(d) (7) and 4(d) (3) F.R.Civ.P. and Rules 4, subd. D(3) and 4, subd. D(2) (e) Mont.R. Civ.P. Defendant contends that the exercise of jurisdiction by this court would be in violation of the due process clause of the Fourteenth Amendment.[1]

By stipulation of counsel various documents have been submitted to the court. From these documents, together with the pleadings and affidavits on file, the pertinent facts may be summarized as follows:

An addition to the plaintiff Continental Oil Company's refinery in Billings was under construction. Plaintiff Stearns-Roger Corporation had a contract for the installation of a newly constructed turbine driven reformer compressor, which was part of a condensate unit. Graham Manufacturing Company, a subcontractor on the job, ordered an "atmospheric relief valve" from the defendant, Atwood & Morrill Company, a corporation engaged primarily in manufacturing machine valves and valve components, which are shipped to customers either pursuant to direct orders, or through orders submitted via Atwood & Morrill agents in various parts of the country.

Graham Manufacturing Company is a New York Corporation, with its office in Batavia, New York. On June 20, 1963, it submitted the order for the valve to "Atwood & Morrill Company, % Bass Industrial Equipment Company" (an agent of defendant) Buffalo,

---

1. In defendant's brief it is stated:
   "The instant case, of course, involves Montana Rule 4.B., and in the absence of a direct interpretation of the scope of this rule by Montana Supreme Court the defendant accepts, for the purposes of its motions, (1) that the language of the Rule is broad enough to cover the type of action brought by the plaintiffs, and (2) that the limits of due process present the only restrictions upon this court's exercise of jurisdiction under the Rule."

Rule 4, subd. B(1) provides in pertinent part that "any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts: * * * (b) The commission of any act which results in accrual within this state of a tort action; * * * (e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; * * * "

New York. The order recited that "shipping instructions will be issued at a later date". Attached to the order form is a sheet of specifications, which reads:

```
BOXING INSTRUCTION                          Vendor Dwg. Rec'd.
                    EXPORT                  Vendor Dwg. to Agent
VENDOR TO SHIP TO:  GRAHAM MFG. CO. INC. BATAVIA  Cust. Ap'l. Rec'd.
                                        N.Y.      Release Fab'n  6-18-63
```

## VALVES

### (SAFETY, RELIEF, ATMOSPHERIC, VACUUM BREAKER)

#### SPECIFICATIONS

```
                                    VENDOR'S NOTE:
                                    Prints Req'd.
                                    Reproducible Req'd.
                        Yes   No
                                    GRAHAM APPR'L REQ'D.
                                    CUST. APPROVAL REQ'D.
```

| | |
|---|---|
| JOB NO. | GN-3565    (SH. 5 OF 5) |
| QUANTITY | ONE |
| MANUFACTURER | ATWOOD MORRILL |
| TYPE | TOP  Screw Lift |
| TYPE NO. | 1516-F ← |
| MATERIAL | IBBT |
| SIZE | 8" |
| FLANGED | YES |
| SCREWED | NO |
| HORIZONTAL | YES |
| VERTICAL | NO |
| SET FOR | 3 - SPSIG |
| DUTY | RELIEVE 18,500 PPH OF STEAM IN SURFACE CONDENSER. |

**GRAHAM MANUFACTURING CO., INC.**
and
**Heliflow Corporation**

On September 9, 1963, Graham notified defendant through its Buffalo agent, Bass Industrial Equipment, to ship the order to "Stearns-Roger Corporation, c/o Continental Oil Co. Refinery, Billings, Montana" via rail, prepaid. On October 7, 1963, the defendant sent the valve by rail as requested, and it was

subsequently installed in the refinery addition.

Plaintiffs contend that the valve which Atwood & Morrill manufactured, and sent in response to the purchase order, did not comply with the specifications, was not capable of performing the job required, and its failure in that regard was the cause of an explosion and resulting damages. Defendant contends that "no deviation from the specifications for the standard valve contained in the catalog was required to fill the order".

The defendant does not maintain a place of business in Montana, has not qualified to do business in the state, and does not have any property located in the state. Although defendant has agents in various parts of the United States whose exclusive territory covers practically every state, no agent has been assigned to the State of Montana; nor has any agent solicited business in the state, through advertising literature or otherwise. Except for the valve in question, it does not appear that any shipment of Atwood & Morrill products has been made by the company into Montana.

It is clear that at the time of shipment defendant knew the valve was being sent to Montana. There is nothing in the record to show that it had this knowledge prior to receiving the shipping instructions from Graham.

It is clear also that the valve was ordered by Graham on specifications. It is uncertain whether a special manufacture was required or the defendant had valves in stock, as advertised in its catalog, which met these specifications.

All parties knew that the valve would become an integral ᐧpart of machinery and equipment used in the manufacture and processing of gasoline. Obviously negligent manufacture could result in great hazard and constitute an instrumentality dangerous to life and property, if defectively constructed.

Will the exercise of in personam jurisdiction under these facts offend the "traditional notions of fair play and substantial justice" embodied in the "minimum contacts" test of International Shoe Company v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95?

In McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, it was held that a single transaction may be sufficient to satisfy the requirements of "minimum contacts". The Court, after reviewing the historical development in this area stated: "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." (355 U.S. at 222, 78 S.Ct. at 201).

The sweeping effect of McGee was limited somewhat the following year by Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, where the Court said, "But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * *" The Court held further that the application of the minimum contact rule "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the foreign State, thus invoking the benefits and protections of its laws". (357 U.S. at 251, 253, 78 S.Ct. at 1238, 1240.)

In L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 9 Cir. 1959, 265 F.2d 768, the court quotes with approval "three rules which can be drawn from a combined reading of International Shoe, McGee and Hanson against which all future litigation of a like nature may be tested", as follows:

"(1) The nonresident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if

its effects within the state are substantial enough to qualify under Rule Three.

"(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a 'substantial minimum contact.'

"(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of 'fair play' and 'substantial justice.' If this test is fulfilled, there exists a 'substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens." (265 F.2d at 773–774).[2]

The effect of International Shoe, McGee, Hanson and other cases in this area was considered by Mr. Justice Goldberg in an opinion denying stay pending appeal in Rosenblatt v. American Cyanamid Company, 1965, 86 S.Ct. 1, 15 L.Ed.2d 39, 43, where the alleged tortious act occurred in New York, the forum state. Mr. Justice Goldberg said in part: " * * * In cases under these (long arm) statutes in state and federal courts, jurisdiction on the basis of a single tort has been uniformly upheld:

'Indeed, the constitutionality of this assertion of jurisdiction, today, could only be doubted by those determined to oppose the clear trend of the decisions. This situation is exactly that of the nonresident-motorist statutes, which were long ago upheld, except that the highways are not directly involved. It is now clear, if it was ever in doubt, that the nonresident motorist

cases were not really based on "consent" but on the interest of the forum State and the fairness of trial there to the defendant.' Currie, The Growth of the Long Arm, 1963, U.Ill.Law Forum 515, 540.

' * * * Currie has interpreted and generalized the Hanson test as a requirement "that the defendant must have taken voluntary action calculated to have an effect in the forum state".' Currie, op. cit, at 549." (86 S.Ct. at 3, 4, 15 L.Ed.2d at 43, 44).

Are the facts that (1) the defendant manufactured products for a national and interstate market; (2) the valve was ordered by specifications; (3) the defendant knew at the time of shipment that it would be used in Montana; (4) any defect in its negligent manufacture might constitute a serious hazard; and (5) the explosion allegedly resulting from a defective valve occurred in Montana sufficient to meet the "minimum contact" test as developed in the foregoing decisions?

In an article on "Personal Jurisdiction over nonresidents and Montana's New Rule 4B," 24 Mont.L.Rev. 3, 20, the author, Thomas E. Towe, states:

"If the defendant sends goods into the state which cause injury within the state because of their defective manufacturing or packaging, he should be subject to that state's jurisdiction, whether the injured party dealt with the defendant directly or whether he purchased the defendant's goods through an independent contractor. Further, it has been held that if the defendant anticipated and expected his goods to be delivered into and used within the forum state, that state had jurisdiction over him for causes of action resulting from the negligent manufacture of those goods."

While there are contrary decisions,[3] it appears that the majority rule supports this statement.

---

**2.** See also Kourkene v. American BBR, Inc., 9 Cir. 1963, 313 F.2d 769, 773.

**3.** See e. g., Mann v. Equitable Gas Co., N.D.Va., 1962, 209 F.Supp. 571, where a

In Gray v. American Radiator and Standard Sanitary Corp., 1961, 22 Ill.2d 432, 176 N.E.2d 761, the defendant, a foreign corporation, manufactured a safety valve in Ohio. It was incorporated in a water heater by another corporation in Pennsylvania, and this corporation sold the heater to plaintiff. The plaintiff was injured in Illinois when the valve exploded. The Illinois court upheld jurisdiction in an action for negligent manufacture of the valve, stating that, "Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State. * * * As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. * * *" (176 N.E.2d at 766).

Gray was followed in Keckler v. Brookwood Country Club, N.D.Ill.1965, 248 F.Supp. 645, 649. Following a rather extensive review of cases involving the "minimum contact" test, the court said in part:

" * * * When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in *any* state for the damage the product causes. Nor can he deny the substantial interest of the injured person's state in providing a convenient forum

for its citizens. * * * The result is that a manufacturer who voluntarily places his product in the national channels of commerce not only submits himself to jurisdiction in all states where his product causes injury, but also to the law of those states."

The case most nearly in point factually is Hearne v. Dow-Badische Chemical Company, S.D.Tex.1963, 224 F.Supp. 90, although in that case there were additional factors to support jurisdiction in Texas. The defendant, a Kansas corporation, manufactured a valve in Kansas and shipped it to a corporation in Texas, where the valve caused an explosion. The court said in pertinent part:

" * * * I feel the State of Texas has a special interest in seeing that products delivered within its borders, which are to be utilized in such a manner as to cause great hazard if negligently manufactured, are sound and to this end is interested in providing a forum where actions may be brought to compensate its injured residents and thus encourage a high standard of care on the part of the manufacturers." (224 F.Supp. at 99–100).[4]

In Hutchinson v. Boyd and Sons Press Sales, Inc., D.Minn.1960, 188 F.Supp. 876, the court denied a motion to quash service of process and dismiss in an action involving injuries sustained by an employee from a defective press which the defendant, a foreign corporation, sold to his employer. The court said in part:

"The trend toward liberality in construing statutes providing for jurisdiction over foreign corporations and service of process in connection therewith is creative of a 'minimum con-

---

Texas corporation manufactured pipe in Texas and sold it to a gas company which used it in West Virginia where it exploded, injuring plaintiff; Erlanger Mills Inc. v. Cohoes Fibre Mills, Inc., 4 Cir. 1956, 239 F.2d 502, where the defendant consummated a sale in New York and thereafter the plaintiff purchaser shipped the goods to its factory in North Carolina. There was no direct shipment by the manufacturer to the purchaser or user in either case.

4. Many textwriters and cases have suggested that a court's interest in acquiring jurisdiction over nonresident defendants is higher when the claim arises out of acts or ownership. of things which are of a sort dangerous to life or property. See e. g. American Law Institute, Restatement of Judgments, § 23; Anno. 78 A.L.R.2d 397, 400.

tacts' rule as a prerequisite to the exercise of power over nonresident defendants. A mere isolated act, depending upon the facts and circumstances of the case under consideration, may constitute doing business in the forum where process is served. The tortious act relied on by plaintiff was consummated in Minnesota." [5] (188 F.Supp. at 878, 879).

In Ehlers v. United States Heating and Cooling Mfg. Corp., 1963, 267 Minn. 56, 124 N.W.2d 824, the court upheld substituted service on a Delaware corporation as meeting the "minimal contact" test, where property was damaged in Minnesota as a result of a defective boiler manufactured in Ohio and sold through a Chicago distributor, the court holding that the fact that the product would "in the regular course of distribution, be purchased and used by a Minnesota buyer would seem reasonably to have been anticipated by the manufacturer".

In Waukesha Building Corporation v. Jameson, W.D.Ark.1965, 246 F.Supp. 183, the court denied a motion to quash and dismiss in an action involving the shipment by a foreign corporation of a set of valves for use in heating and air conditioning a motor inn in Arkansas. While there were additional contacts in that case, the court indicated that the shipment of the valve to the job site would in itself be sufficient to meet the minimum contacts requirement. The court said in part:

" * * * Suffice it to say that the minimum contacts requirement in the above situation would be satisfied by virtue of Erie's contracting to supply the first set of valves and its shipment directly to the job site. This single transaction is sufficient under the McGee case to render it subject to the jurisdiction of the courts of this State with respect to any controversy growing out of those goods." (246 F.Supp. at 189).

In a memorandum opinion in Hartung v. Washington Iron Works, 1964, 267 F. Supp. 408, this court relied upon Feathers v. McLucas, 21 A.D.2d 558, 251 N.Y.S.2d 548, construing Rule 4(b) (1) of the Montana Rules of Civil Procedure. In Feathers the New York court held that the minimal contacts with New York had been established where the manufacturer of a petroleum tank trailer sold to a Pennsylvania interstate carrier could be expected reasonably to foresee that the tank trailer might be used in adjoining New York State. The Feathers decision was subsequently overruled in Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 1965, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 on the ground that the New York statute was not broad enough to sustain jurisdiction.[6] It did not question the conclusion of the court in Feathers that the service met the minimum contact requirement of due process.[7] Moreover, it may be noted that in Feathers, as well as other cases supra, the court held that due process had not been violated even though there was only constructive notice that the product would be used in New York. In the instant case there was actual notice by virtue of the direct shipment of the valve to Montana from the defendant's manufacturing plant.[8]

5. Hutchinson v. Boyd was cited by Mr. Justice Goldberg in Rosenblatt v. American Cyanamid Company, supra.

6. Montana Rule 4, subd. B quoted in note 1, is substantially broader than the New York Statute conferring in personam jurisdiction over nonresidents.

7. See footnote 7 (261 N.Y.S.2d at p. 20, 209 N.E.2d at p. 77) where the court said: "It was the Appellate Division's conclusion that the 'minimum contacts' test was satisfied by the showing that the tank, with its load of flammable liquid, was 'an instrumentality dangerous to life and property, if defectively constructed', and that the appellant had 'knowledge' that the tank was designed for ultimate use by a Pennsylvania carrier in interstate commerce and 'could be expected reasonably to foresee that its acts, if wrongful, might well have potential consequences in adjoining New York."

8. For a further discussion of the rules applicable in determining whether service on a nonresident manufacturer meets the

■ Both parties have submitted helpful and well-written briefs. Plausible arguments are made in support of their respective contentions. On balance I conclude that the shipment by defendant to Montana of a product it had manufactured, which allegedly was defective and caused an explosion damaging plaintiff's property, is sufficient to meet the minimum contacts test and confer jurisdiction upon this court.

I concur fully in the views expressed by Judge Smith in his recent decision in Bullard v. Rhodes Pharmacal Co., D.C., Missoula Division, 263 F.Supp. 79. It is true that in Bullard defendant's contacts with Montana were in some respects more substantial than in the instant case. The intention to do business in Montana, however, may reasonably be inferred in this case from the shipment by defendant to plaintiff Stearns-Roger Corporation, % plaintiff Continental Oil Company in Billings, Montana.

■ In the alternative, defendant has moved for change of venue to the District of Massachusetts, pursuant to 28 U.S.C. § 1404(a) which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought". The court, in the exercise of its discretion, is limited to the three factors specified, except that due consideration must be given to plaintiff's choice of forum. Unless a defendant makes a strong showing in favor of transfer, the plaintiff's choice of forum is rarely disturbed. Grubs v. Consolidated Freightways, Inc., D.Mont.1960, 189 F.Supp. 404, 408, and cases there cited.

■ The valve in question was manufactured in Massachusetts, and there will be testimony regarding its design and manufacture. On the other hand, the explosion occurred in Montana, and there will be testimony regarding the installation, testing and performance of the valve in Montana. It is obvious that it would be more convenient for defendant and its witnesses to try the case in Massachusetts, and for plaintiffs and their witnesses to try the case in Montana. Particularly in view of the fact that the explosion occurred in Montana and that plaintiff has chosen Montana as the forum, I conclude that the motion to transfer should be denied.

Accordingly, it is ordered that the defendant's motion is denied, and the defendant is granted 30 days to plead further.

The desirability of uniformity in construing the "minimum standards" test throughout the district is recognized by all members of the court. Accordingly I have submitted this opinion to Judges MURRAY and RUSSELL E. SMITH and am authorized to state that they concur in the views herein expressed.

---

minimum contact requirement of due process, see Phillips v. Anchor Hocking Glass

Corporation, 1966, 100 Ariz. 251, 413 P.2d 732.