Roosevelt BERGERON

v.

SABINE DREDGING AND CONSTRUCTION COMPANY, Inc., and T. L. James and Company.

Civ. A. No. 12908.

United States District Court
W. D. Louisiana,
Opelousas Division.

Feb. 29, 1968.

Daniel J. McGee and J. Daniel Rivette, Arnaudville, La., for plaintiff.

Mouton, Champagne & Colomb, Welton P. Mouton, Jr., Lafayette, La., for Sabine.

Davidson, Meaux, Onebane & Donohoe, Timothy J. McNamara, Lafayette, La., for T. L. James.

PUTNAM, District Judge.

## MEMORANDUM OPINION ON MOTIONS

This Jones Act case is presently before the Court upon motions by defendant Sabine Dredging and Construction Company, Inc. (hereafter called "Sabine") (1) to dismiss, or, in lieu thereof, to quash return of service of summons (2), alternatively, to dismiss for improper venue, and (3) alternatively, to transfer the case to a more convenient forum, the Eastern District of Texas, Beaumont Division. Also before the Court is a motion by defendant T. L. James and Company (hereafter called "T. L. James") to transfer the case to the Eastern District of Texas, Beaumont Division.[1]

The plaintiff, a resident of this district, filed suit as the result of an accident which befell him on April 30, 1965, aboard the tug "Miss Kay" while operating in Matagorda Bay, along the coast of Texas. Plaintiff alleges that he was employed by Sabine and/or T. L. James

---

[1] In addition to these motions, Sabine and T. L. James have each filed a motion to dismiss for failure to state a claim. Sabine has abandoned its motion. An order dismissing this motion will be entered.

T. L. James' motion is also denied. The employer-employee relationship is a question for the jury, Baker v. Texas & Pacific Ry. Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959), and the record at this stage does not clearly establish a bareboat charter of the vessel by T. L. James to Sabine, which would negate any obligation of seaworthiness owed by T. L. James to plaintiff.

as a member of the crew of the tug, and that the vessel was operated and controlled by Sabine and/or T. L. James.

At the time of the accident, defendant Sabine was a Texas corporation, which was also licensed to do business in Louisiana. On the date this suit was filed, Sabine had been formally dissolved in Texas, and had formally withdrawn its authority to do business in Louisiana. T. L. James was at all times pertinent hereto, and is at present, a Louisiana corporation. T. L. James was a much larger dredging and construction company than Sabine, and the two corporations had worked together on projects or jobs in both Louisiana and Texas.

Plaintiff's accident occurred during the course of dredging work being performed by the defendants Sabine and T. L. James under the following circumstances. Sabine had obtained a contract with the United States Army Corps of Engineers for dredging the Gulf Intracoastal Waterway, from Cedar Lakes to the Colorado River, in Brazoria and Matagorda Counties, Texas. The situs of this job was exclusively within the State of Texas. Sabine then entered into a written subcontract with T. L. James for the job in question. This subcontract was effected in Louisiana. It was signed by T. S. Wiley, Jr., for Sabine, at Port Arthur, Texas, then mailed to T. L. James for acceptance at Kenner, Louisiana, where it was finally executed.[2]

The dredging equipment and vessels used on the Texas job belonged to T. L. James, and the employees engaged in this work, including plaintiff, were regular employees of T. L. James. The supplies needed during the course of the job were obtained by T. L. James from a supply house in New Orleans, Louisiana.

There is evidence in the record of an oral agreement modifying the subcontract between Sabine and T. L. James.[3] Mr. Mathews, supervisor of dredging for T. L. James, said in his deposition that the oral agreement between him and Colonel Solberg, acting for Sabine, was probably made by telephone, he being in Louisiana, Solberg being in Texas. But the pair met at the Texas job site and in New Orleans, Louisiana, on several occasions about the time of their negotiations.[4]

The oral agreement was that T. L. James would charter and/or contract all its equipment then being used on the Texas job, as well as T. L. James' supervisory or "straight-time" employees, to Sabine. Sabine would then perform 20% of the total work,[5] and would pay T. L. James for this privilege. T. L. James dropped its crew members or "nonstraight-time" employees, including plaintiff, from its payroll, and they were carried on Sabine's payroll for the duration of the 20% period, which ran from April 12 through May 9, 1965. It was during this period that plaintiff suffered his accident.

### I. *Jurisdiction and Service of Process*

We will first consider Sabine's motion to dismiss, or, in lieu thereof, to quash return of service of summons. Through an abundance of caution on the part of counsel for plaintiff, defendant Sabine has been served three times under three different Louisiana statutes providing for service of process—LSA–R.S. 13: 3201–13:3207; LSA–R.S. 13:3471; and LSA-R.S. 12:202A(3).[6]

---

2. We are not now deciding whether or not this is a Texas or a Louisiana contract. These facts are mentioned in connection with the motions now before the court, and are pertinent for the purpose of showing Sabine's activities in Louisiana.

3. Deposition, Mr. Mathews, pp. 21–23. Also see daily dredging reports and payroll records filed.

4. Deposition, Mr. Mathews, p. 25.

5. Contract No. DA–41–243–CIVENG–65–34, Corps of Engineers, with Sabine required the contractor to perform 20% of the total work under the contract with its own organization. See Part II of Contract, Special Conditions, p. 10, Paragraph SC–17.

6. F.R.Civ.P. Rules 4(d) (7) and 4(e), 28 U.S.C., permit service upon foreign corporations in the manner prescribed by the

The common requisite of all these "long-arm" statutes is a connexity between the cause of action and the defendant's business activity within Louisiana. The cause of action must *arise from, result from, grow out of,* or *be connected with* the defendant's business activity within the state. It is Sabine's contention that the required connexity is lacking in this case, since plaintiff was injured on a job being performed exclusively within the State of Texas, and since plaintiff's cause of action is unconnected with any business done by Sabine within Louisiana.

The comments under LSA-R.S. 13:3201 and LSA-R.S. 13:3471 state that these statutes were intended to tap the full potential of state jurisdiction ratione personae over nonresidents as allowed by recent Supreme Court decisions, particularly International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ; and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Both state and federal courts have recognized this legislative policy. See, Curtis Publishing Co. v. Golino, 383 F.2d 586 (5 Cir. 1967) ; Time, Inc. v. Manning, 366 F.2d 690 (5 Cir. 1966) ; Morrison v. New Hampshire Ins. Co., 249 La. 546, 187 So.2d 729 (1966) ; Fidelity Credit Co. v. Bradford, 177 So.2d 635 (La.App.1965), writ refused 248 La. 430, 179 So.2d 273 ; Babineaux v. Southeastern Drilling Corp., 170 So.2d 518, 523–524 (La.App.1965), writs refused 247 La. 613–615, 172 So.2d 700, appeal dismissed, Seacat Marine Drilling Co. v. Babineaux, 382 U.S. 16, 86 S.Ct. 67, 15 L.Ed.2d 12.

Thus, a liberal interpretation has been given to the "resulting from" restriction of LSA-R.S. 13:3471(1), and it has been held that the particular activity which gave rise to the cause of action need only be a natural result of the general business activity of the foreign corporation within the state. Buckley v. Beaumont Enterprise, 232 F.Supp. 986 (E.D.La.1964) ; Home Gas and Fuel Co. v. Mississippi Tank Co., 143 So.2d 641 (La.App.1962). By analogy, the "arising from" and the "growing out of or connected with" restrictions of LSA-R.S. 13:3201 and LSA-R.S. 12:202A(3) respectively should be given the same liberal interpretation.

We hold that the cause of action asserted by plaintiff herein is sufficiently connected with the transacting of business by Sabine within the state. A basic element of plaintiff's Jones Act cause of action is his employee status with Sabine. This employment relationship, if found to exist, may be said to have originated in Louisiana, where the subcontract between Sabine and T. L. James was effected, or where the oral modification of the subcontract was negotiated. See: Babineaux v. Southeastern Drilling Corp., supra; Shaw v. Texas and Pacific Ry. Co., 170 So.2d 874 (La.App.1965),

law of the state in which the district court is held. The pertinent provisions of the Louisiana statutes relied upon are:
LSA–R.S. 13:3201:
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's (a) transacting any business in this state"
&ast; &ast; &ast; &ast; &ast;
LSA–R.S. 13:3471(1):
"If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state, &ast; &ast; &ast; may be made on any employee or agent of the corporation &ast; &ast; &ast;."
&ast; &ast; &ast; &ast; &ast;
LSA–R.S. 12:202A(3):
"&ast; &ast; &ast; This resolution, which shall accompany the power of attorney required by paragraph 2 of this Subsection shall agree that any lawful process against the corporation which is served upon the agent shall be a valid service upon the corporation. This authority shall continue in force and be maintained as long as any liability growing out of or connected with the business done by the corporation in this state remains outstanding against the corporation."

writs denied 247 La. 621, 172 So.2d 703. Moreover, under the arrangements existing between Sabine and T. L. James, the job being performed in Texas by these two corporations was not unconnected with the transacting of business by Sabine within Louisiana. The subcontract was executed in Louisiana. The dredging equipment used belonged to T. L. James, a Louisiana corporation, and the employees on the job were regular employees of T. L. James. Supplies were obtained from a supply house in Louisiana. Considering all the circumstances, plaintiff, who was a Louisiana resident and a regular employee of T. L. James, was involved in the job in Texas and the accident there as a natural result of the business activity carried on and generated by Sabine in Louisiana. Accordingly, Sabine's motion to dismiss, or, in lieu thereof, to quash return of service of summons is denied.

## II. *Venue*

We now take up defendant Sabine's motion to dismiss for improper venue. The governing statute is 28 U.S.C. § 1391(c),[7] which provides:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

Sabine argues that this statute requires that venue exist at the time of filing suit; since this suit was filed after Sabine had been dissolved as a corporation in Texas, and after Sabine had withdrawn its license to do business in Louisiana, venue in this court is improper.

There is substantial authority that venue is properly determined under 28 U.S.C. § 1391(c) as of the time the cause of action arose. Farmers Elevator Mutual Ins. Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7 (8 Cir. 1965); Ward v. Island Creek Fuel & Transportation Co., 261 F.Supp. 810 (N.D. W.Va.1966). See also, Eastland Construction Co., Inc. v. Keasbey and Mattison Co., 358 F.2d 777 (9 Cir. 1966). However, we prefer to base our conclusion that venue is properly laid herein upon the theory that Sabine has consented to this venue or has waived its objections to same. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939); Ward v. Island Creek Fuel and Transportation Co., supra, 261 F.Supp. at p. 813; 1 Moore's Federal Practice, § 0.142 (5.–3.); 18 Fletcher, Corporations, § 8654 (Rev.1955).

Under LSA-R.S. 12:202A(3), Sabine, at the time of qualifying to do business in this state, consented to be sued in Louisiana through service of process upon its appointed agent as long as any liability growing out of or connected with the business done by the corporation in this state remains outstanding. See, King v. American Tank & Equipment Corp., 144 So. 283 (La.App.1932), where it was held that a foreign corporation's formal withdrawal from the state and rescission of appointed agent's power would not avail the corporation in the face of the now LSA-R.S. 12:202A(3), and the corporation was amenable to suit in the state.

Because of Sabine's consent to be sued in Louisiana, Sabine's position in this case is no better than it would have been if Sabine had never dissolved in Texas[8]

---

7. In the leading case of Pure Oil Co. v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966), the Supreme Court held that, for purposes of venue, the definition of "residence" in 28 U.S.C. § 1391 (c) is applicable to the Jones Act, 46 U.S.C. § 688.

8. Under the law of Texas, suit may be filed against a dissolved corporation with-

in a period of three years after the date of dissolution. V.A.T.S. Bus.Corp.Act, art. 7.12. See also: Rule 29, Texas Rules of Civil Procedure; 16A Fletcher, Corporations, § 8143 (Rev.1962); 17 Fletcher, Corporations, § 8583 (Rev. 1960).

or withdrawn from Louisiana. Since, before its dissolution or withdrawal, Sabine was, at the very least, licensed to do business in this district, the requirements of 28 U.S.C. § 1391(c) are satisfied, and venue in this court is proper.

In accordance with the foregoing, the motion to dismiss for improper venue is denied.

### III. *Motions to Transfer*

Both defendants, T. L. James and Sabine, have moved to transfer this case to the Eastern District of Texas, Beaumont Division, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties, witnesses, and in the interest of justice. It is the court's opinion that this case should not be transferred. The balance of convenience and justice has not been shown to weigh strongly in favor of defendants moving for a transfer. The plaintiff's choice of forum under these circumstances should not be disturbed. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Time, Inc. v. Manning, 366 F.2d 690 (5 Cir. 1966).

