MILLER, Judge
(dissenting).
This is a products liability claim against both defendants appellees.
Louisiana’s Long Arm Statute (LSA-R.S. 13:3201 et seq.) grants to the courts of Louisiana jurisdiction in personam over all types of nonresidents as permitted by the decisions of the United States Supreme Court. Henry G. McMahon, Civil Procedure, 25 La.L.Rev. 28, 30, 32 (1964-65). Louisiana State Law Institute comment (a) under LSA-R.S. 13:3201 specifically states that this legislation was offered and enacted “to permit the courts of this state to tap the full potential of jurisdiction in per-sonam over nonresidents permitted by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).” (Emphasis added.)
Our Long Arm Statute is an adaptation, in civilian terminology, of Section 1.03(a) of the Proposed Uniform Interstate and International Procedure Act, which in turn is based on portions of the Long Arm Statutes of Illinois, Michigan, New York, Wisconsin and other states. See comment (b) under LSA-R.S. 13:3201. If any state or federal court has jurisdiction under the *708 facts of this case as permitted by the International Shoe and McGee cases and their progeny, the trial court has jurisdiction under Louisiana’s Long Arm Statute.
As I read the cases from other jurisdictions, if these two defendants were based in Louisiana and had the contacts in other states which Sterling Models and Sig Manufacturing Company had with Louisiana, jurisdiction would be upheld in some state or federal courts. (See generally cases in appendix.) I see no reason why Louisiana’s consumer protection should not be commensurate with other forums. If federal due process enables our sister states to provide forums for causes of action against Louisiana corporations, I see no reason to deny reciprocation to our consumer plaintiffs. Our statute is as broad as the other Long Arm Statutes.
Perhaps the best summary of the modern jurisprudential rule is found in Continental Oil Company v. Atwood & Morrill Company, 265 F.Supp. 692 (D.C.Mont.1967), where the court quoted from an article in the Montana Law Review, “Personal Jurisdiction over nonresidents and Montana’s New Rule 4B,” 24 Mont.L.Rev. 3, 20.
“If the defendant sends goods into the state which cause injury within the state because of their defective manufacturing or packaging, he should be subject to that state’s jurisdiction, whether the injured party dealt with the defendant directly or whether he purchased the defendant’s goods through an independent contractor . . . . ” 265 F.Supp. at 696.
I hold to the view that Louisiana’s courts are “to tap the full potential” of jurisdiction over these two nonresident defendants. When our Long Arm Statute was written, this potential was as yet unrealized. It has been subsequently delineated and at least partially realized by the federal and state jurisprudence cited in the appendix. It is our duty to accept this realized potential and make available to Louisiana citizens this constitutionally permissible jurisdictional reach. If we accept this duty, Louisiana courts have jurisdiction over these two defendants.
LSA-R.S. 13:3201 sections (a) and (b) both provide a basis for causes of action arising out of tort as well as contract. The area of tort application applies more clearly to products liability cases. Other forms of tort action may be better provided for in sections (c) and (d). That products liability is written within the ambit of subsections (a) and (b) is supported not only by the source provisions of our Long Arm Statute, but by other sources as well:
“ . . . .of the several situations in which this section (referring to subsection [b]) could be applied, the most important will probably be products liability claims based on the alleged negligent design or manufacture of a prod-duct shipped directly to the forum by a nonresident pursuant to a contract perfected in or out of state.” 40 Tul.L.Rev. 366, 382 (1965-66).
See also comments to Section 1.03 of the Uniform Interstate and International Procedure Act — -“Each of the subdivisions will support a cause of action under any theory of law. For example, a claim arising from ‘transacting business’ may sound in contract, tort, or quasi contract.” Uniform Laws Annotated, Vol. 9B at 310 (1956). In Edward J. Moriarty & Co. v. General Tire & Rubber Co., 289 F.Supp. 381, 391 (S.D.Ohio, W.D.1967), the court was considering a statute identical to our R.S. 13 :- 3201(a). That court cited the above quotation for the proposition that the “transacting business” provision encompasses claims arising from tort, contract or quasi-contract. Also, in Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481 (7th Cir. 1968) the court in Illinois (a State upon whose statute our source statute was partially based) upheld a tort a action of libel brought under section 17(1) a of the Illinois Civil Practice Act. This subsection is identical to our LSA-R.S. 13 :- 3201(a).
*709 At page S of Sterling Models deposition, the principal owner testified in answer to questions by his counsel:
“Q. Did Sterling Models in June of 1968 have any customers in Louisiana to your knowledge?
“A. Yes.
“Q. What would the nature of that customer be ?
“A. They would be wholesalers, wholesale distributors.
“Q. Do you know how many you had in Louisiana in 1968?
“A. No, but we had certainly one or more, perhaps as many as three or four.
“Q. How would you deal with those wholesalers ?
“A. We would receive orders in the mail. The orders would then be filled and shipped by truck generally-
“Q. Now, do you have any knowledge yourself as to how the business relationship with any of these wholesalers originated or what caused them to deal with your company?
“A. It’s hard to say. We have been in business for about twenty-five years, and we were contacted perhaps through advertising, perhaps through word of mouth by other wholesalers.”
In addition to these contacts, Sterling Models admitted that it advertised in national publications. It received orders through the mail and in turn mailed merchandise directly to Louisiana customers.
Defendant Sig Manufacturing Company had substantially less contact with Louisiana. Its products were advertised in Louisiana through national publications and a few mail orders were received from Louisiana residents. The merchandise was mailed to Louisiana residents.
Both defendants embarked upon a course of conduct calculated to place their goods in the channels of interstate commerce. Each determined for itself what method was most effective for marketing its goods. Defendants chose the medium of national magazines which are distributed widely in Louisiana. By this method defendants have solicited and obtained business in the Louisiana market place. Their sales and delivery by mail and/or motor freight are acts by these defendants calculated to have an effect in the forum state and they are acts by which both defendants have purposefully availed themselves of the Louisiana market and the protection of Louisiana’s laws. (Appendix cases 7, 8, 12, 14 and 15.) *
These defendants did not merely place their goods in a stream of commerce and subsequently discover that their merchandise was in Louisiana (though under appendix cases 7 & 8, this is sufficient under due process). Instead, they deliberately and with intent to generate profit and public awareness of their products, shipped directly into Louisiana and did business directly with its citizens. Insulation via the mails and dealers is of no consequence jurisdic-tionally under our present economy. (Appendix cases 11 and 12.)
Such shipments into Louisiana carried with them not only the products themselves but also the attendant risks revolving around potential defects in manufacture or packaging. Defendants withdrew money from Louisiana and in return, deposited a set of goods and risks. Plaintiff’s suit is based on alleged materialization of some of those risks — risks directly related to the sale of defendants’ products in Louisiana.
In summary, defendants have contracted “to supply goods” to Louisiana residents. In so doing they have introduced certain product related risks into Louisiana. These risks may or may not have caused Michael Moore’s death, but under subsection (b) of *710 LSA-R.S. 13:3201, defendants are called upon to come to Louisiana to make this determination. Plaintiff’s cause of action is based upon the alleged materialization of risks directly “arising” out of defendants “contracting to supply goods or services” in Louisiana. LSA-R.S. 13:3201(b) applies.
There is no evidence to show a denial by either defendant that plaintiff Moore’s son purchased his model airplane and control lines in Louisiana. There was no suggestion by either defendant that they did not desire to have Louisiana residents purchase and use their products in Louisiana.
The record is somewhat ambiguous in relation to the place of purchase of the plane and control lines. If this bears upon the Louisiana court jursdiction/it was encum-bent upon defendants to allege this in their declinatory exceptions to jurisdiction. 29 Am.Jur.2d Evidence § 146. Louisiana courts are courts of general jurisdiction, as are all state courts. Perez v. Rhiddlehoover, 247 F.Supp. 65, 72 (E.D.La.1965). When suit is filed in a state court and that court has jurisdiction over the subject matter, jurisdiction over the person, duly served, is presumed unless defendant, by way of exception, proves otherwise:
“It must be borne in mind that where one has been duly served with process from a court of general jurisdiction, if he appears generally he waives any personal privilege he may have to object to the jurisdiction of that court; and that, if he intends to claim such privilege, he must do so either by motion of non pros, or by plea, in which he must allege such facts as, under the statute governing the case, are necessary to establish his privilege . The only thing in issue under the plea in question is the liability of the defendant to answer in that court. Upon that point it may be said there is a quasi presumption of the validity of the process of courts of general jurisdiction. If, in this case, no evidence had been given upon that issue on either side, the maxim ‘Omnia praesumuntur rite esse acta’ would have applied to the process by which the defendant was brought into court .... The plaintiff was not required to allege jurisdiction, but defendant was required to allege want of jurisdiction, and the burden of proof, except in rare instances, goes with the duty of averment.” Gambrill v. Schooley, 95 Md. 260, 52 A. 500, 501 (1902).
The defendants have not complained as to the sufficiency of process and service was apparently properly made. Since there is no evidence in the record relating to the place of purchase of the goods in question, we must assume the facts most favorable to jurisdiction and conclude that the goods were purchased in Louisiana.
Even if the plane and control line wires had been purchased outside Louisiana and brought here, subsection (b) would apply to grant jurisdiction to Louisiana courts. The requirement of subsection (b) that the cause of action arise out of defendants contracting to supply goods in the state is met by the holding in Bergeron v. Sabine Dredging and Construction Co., 281 F.Supp. 223 (W.D.La.1968).
“Thus, a liberal interpretation has been given to the ‘resulting from’ restriction of LSA-R.S. 13:3471(1), arid it has been held that the particular activity which gave rise to the cause of action need only be a natural result of the general business activity of the foreign corporation within the state.” 281 F.Supp. at 226.
Furthermore, due process, under the most recent cases, does not limit jurisdiction to the type of concept of “minimum contacts” required by the majority. (Appendix cases generally.) These recent cases have said that the contact must be such that maintenance of the suit does not offend traditional notions of justice and fair play. However, there is no traditional notion of what concept of minimum contacts should be used to determine justice and fair play.
*711 It is certain that due process revolves around a basic sense of fairness. But, as pointed out in the cases in the appendix, many everchanging factors go into the balancing process by which we make this decision of fairness. The factor with which fairness in the area of jurisdiction is most concerned, and which determines the type of contacts required, is our economy and its progressive changes. (Appendix case 2.)
Contacts necessary for fairness ten years ago are superfluous today. Our economy, via mails and independent interstate carriers, has become so mobile today that yesteryear’s decisions on jurisdiction are not applicable. A middleman or mail order— insulated defendant, under old concepts of minimum contacts, could rest in its home state and ship its products all over the country. It would enjoy a national market and rights, but only local responsibility.
The latest cases have recognized this hiatus in the law. Under the current cases dealing with due process (Appendix cases 7 and 8) intention to deal nationally, dealing and placing the risk in interstate commerce, and its subsequent materialization in a state, is sufficient “contact” for maintenance of jurisdiction in the forum state on a cause of action arising out of this generalized risk. Here we have more, defendant had reason to expect that if their nationally advertised merchandise, which they either mailed or shipped by motor freight to Louisiana wholesale distributors and/or Louisiana purchasers, proved to be defective, they might be sued in Louisiana. (Appendix cases 12, 13 and 15.)
The Louisiana statute does not mention “minimum contacts”. The only reference made to a formula for determination of the extent of the coverage of the statute is found in the comments to LSA-R.S. 13 :- 3201. Therein it is stated that the statute is meant to “tap the full potential” of International Shoe & McGee. As previously stated, potential is an unrealized commodity. The realization of the potential of these cases is found in the subsequent expressions of the state and federal judicial systems in the appendix cases.
Therefore, when we accept the purpose of Louisiana’s Long Arm Statute to be what the Law Institute comment declared it to be — (to let Louisiana residents tap the full potential of the United States Supreme Court cases) — there is little basis for reaching a different result depending on whether the model plane and/or control lines were purchased in Louisiana. Even though the particular risk related to goods purchased out of state did not arise directly out of contracting to supply goods in Louisiana, the risk is exactly the same as those peculiar to the same goods purchased in Louisiana.
Furthermore, the risk allegedly materialized in Louisiana after the goods which were placed by defendants in interstate commerce, had come to rest in Louisiana. Therefore under LSA-R.S. 13:3201, and in light of the avowed intent to implement due process, it can be said that the cause of action arose out of a risk exactly similar to those arising out of defendants contracting to supply goods in Louisiana. That is all that is needed. (Appendix cases 8 and 13.)
“Products liability cases .... have yielded a pronounced relaxation of due process requirements. Instead of requiring ‘purposeful’ contact, jurisdiction has been upheld (in both state and federal courts) on the ground that the defendant might reasonably have contemplated that the product would be used or consumed in the forum.” 40 Tul.L.Rev. at 369.
These defendants knew that their products were in use in Louisiana. It should not matter that the injury in Louisiana resulted from risks which they knowingly introduced into Louisiana but which came about as a result of the purchase of their products in another state.
The fact that Sterling, unlike Sig, is a distributor rather than a manufacturer is of no comfort to Sterling. When the time *712 comes for collecting profit from the interstate sale and distribution of model airplanes, it is not likely that Sterling will be shy in claiming its reward. (Additionally, the record shows that Sterling is owned by the same parties whose corporation, Aerial Toys, Inc., manufactures the model airplanes.) When jurisdiction reaches the manufacturer, Sterling, as distributor, must reap this fruit as well. After all, under the facts of the present case and by the very nature of Sterling’s business, it is they who are directly responsible for the national distribution of these planes and their attendant risks. Improper marketing, an allegation in this case, must be the responsibility of a distributor. Sterling, by its own act and for profit, “purposefully availed itself of the privilege of conducting business” in Louisiana. In its broadest sense, this act is the placing of these planes in interstate commerce; the “contact” is the injury. (Appendix cases 7, 8, 9, 10 and 11.)
Stelly v. Quick Manufacturing, Inc., 228 So.2d 548 (La.App. 3 Cir. 1969) does not reject the result reached in this dissent. In Stelly, Toro was let out on an exception to the jurisdiction. As we stated at 228 So.2d 548, at 552
“ . . . Toro does not sell its products to any person, company, partnership, corporation, association, or governmental body in Louisiana ... Its sales representatives sell to the distributors (in Texas), and there are no distributors acting on Toro’s behalf in Louisiana . . . No bills have ever been sent by Toro to anyone in Louisiana, nor have any payments been received from Louisiana.” (Parenthetical addition by writer.)
Toro did not manufacture or ship the product which caused the damage. These transactions were completed by Quick whose assets Toro later acquired. Had Toro been responsible for manufacture and shipment of the mower, it would have been required to litigate in Louisiana as would the present defendants even if their goods were purchased outside Louisiana. (Appendix cases 7 and 8.) The “potential” of due process has been recently realized throughout this country. It encompasses such cases.
Our Long Arm Statute is as broad as due process will permit. I advocate the exercise of jurisdiction commensurate with reality and the recent jurisprudence.
APPENDIX TO DISSENT
1) Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 232 (New Jersey 1966).
“Together, these cases (Shoe, McGee and Hanson) teach that the due process clause allows a test for jurisdiction which is flexible, expansive and dynamic.”
2) Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761, 766 (Illinois 1961).
“With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.
* He * * * *
“Unless they are applied in recognition of the changes brought about by technological and economic progress, jurisdictional concepts which may have been reasonable enough in a simpler economy lose their relation to reality, and injustice rather than justice is promoted. Our unchanging principles of justice, whether procedural or substantive in nature, should be scrupulously observed by the courts. But the rules of law which grow and develop within those principles must do so in the light of the facts of eco *713 nomic life as it is lived today. Otherwise the need for adaptation may become so great that basic rights are sacrificed in the name of reform, and the principles themselves become impaired.”
3) International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This case rejected the forum corporeality requirement expressed in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), stating:
“But now that the capias ad responden-dum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ”
4) McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). It was held that a single transaction is sufficient to satisfy the requirements of “minimum contacts” and due process when
“ . . . the suit was based on a contract which had substantial connection with that State.”
As to this court’s awareness of economic factors influencing the type of contacts necessary for authorization by due process of suit, it was said
“With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines.” (Emphasis added.) 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226.
5) Terasse v. Wisconsin Feeder Pig Marketing Coop., 202 So.2d 330, 333 (La.App. 1 Cir. 1967). This case refutes the contention that McGee and its offspring should be limited to insurance cases.
“Granted that the McGee case, supra, was dealing with an insurance policy, and even though our own state’s jurisdictional rules provide specifically for insurance contracts, LSA-R.S. 22:1253, we do feel that the Court was not limiting itself to insurance contracts alone.”
See also Becher Corporation v. Anderson-Tully Co., 252 F.Supp. 631, 634 (E.D.Wis.1966).
“ . . . the argument that the McGee case has been limited to the insurance field has previously been rejected in this district.”
In accord, see Custom Leasing, Inc. v. Gardner, 307 F.Supp. 161 (D.C.1969), a contract case; Foye v. Consolidated Baling Machine Co., 229 A.2d 196 (Maine, 1967), a products liability case.
6) Hanson v. Denckla, 357 U.S. 235, 283, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). This case can be interpreted to liberalize the single contact concept of McGee. The court here, while relying on some action by defendant, did away with a requirement of direct quantum oriented contacts with the forum state.
“ . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” (Emphasis added.)
This has been the effect of this decision in the cases, both state and federal, which have followed Hanson. The “act” has come to be shipping or carrying in interstate commerce and the “contact” is injury produced in the forum state.
7) Andersen v. National Presto Industries, Inc., 257 Iowa 911, 135 N.W.2d 639, 643 (1965). Here the only contact that the non-resident manufacturer had with the forum state was the presence in the forum state of a single allegedly defective coffeemaker. Plaintiff was injured by the cof *714 feemaker and sued. In finding jurisdiction, the court said:
“It is charged that the defendant marketed the coffeemaker; and its affidavit in support of its special appearance in no way counters the inference that its product was designed for general sale and use not only in its home state of Wisconsin, but generally. It would be flying in the face of reality if we did not admit knowledge that manufactured products are ordinarily designed for commercial sale in whatever markets may be found for them, without regard to state lines. They are placed in the stream of commerce; and when they reach a foreign state they have the protection of its laws. It is not unfair to say they should assume the burdens as well as the benefits.” (Emphasis added.)
“ . . . There is much justice in a holding which places the burden of inconvenience and expense upon the tort feasor which puts its defective product upon the market in another state and so injures an innocent user, rather than upon the injured party.”
8) Keckler v. Brookwood Country Club, 248 F.Supp. 645 (N.D.Ill.1965). This products liability case dealt with a defective golf cart. Defendant nonresident manufacturer delivered the cart to a retailer who in turn sold it to plaintiff’s Country Club. Defendant’s motion to quash was granted but under stipulation that plaintiff be granted five days to show that defendant’s distribution pattern was such as to’ indicate a desire to use interstate commerce. The court said:
“The manner in which the injury-producing defect came about has no impact on the question of jurisdiction: the jurisdictional act is not the creation of a defect, but the distribution of defective products in a natianal way. When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in any state for the damage the product causes. Nor can he deny the substantial interest of the injured person’s state in providing a convenient forum for its citizens . . .
“The result is that a manufacturer who voluntarily places his product in the national channels of commerce not only submits himself to jurisdiction in all states where his product causes injury, but also to the law of those states.” (Emphasis added.) 248 F.Supp. at 649.
9) J. Henrijean & Sons v. M. V. Bulk Enterprise, 311 F.Supp. 417 (W.D.Mich.S.D.1970). Plaintiff, a Michigan resident, had ordered a certain quantity of steel from a European corporation. The only connection that defendant had with the steel was that he picked up the steel in New Orleans after delivery there by another carrier, and subsequently shipped it by barge to Chicago where another carrier delivered it to plaintiff in Michigan. Somewhere along the line the steel rusted and plaintiff sued all carriers for negligent handling. He selected Michigan as the forum. Defendant had never been in Michigan for any purpose and the contract to haul the steel was not made there. Plaintiff alleged that defendant knew the steel was on its way to Michigan and contended that this was sufficient for jurisdiction. The court upheld jurisdiction stating:
“In light of the commercial setting of this transaction, the nature of the defendant’s overall activities, its ability to protect itself from the effects of its own negligence, and the foreseeable possibility that its negligence will have tortious consequences in other states, it does not seem offensive to the concept of fair play and justice to permit this plaintiff to bring this suit in the forum where the consequences of the defendant’s acts occur.” (Emphasis added.) 311 F.Supp. at 421.
10) Dornbos v. Kroger Co., 9 Mich.App. 515, 157 N.W.2d 498, 501 (1968). This case was cited approvingly in Nationwide Motorist Association of Michigan v. Freeman, 405 F.2d 699, 700 (6th Cir., 1969). In Dorn- *715 bos, plaintiffs, residents of Michigan, were in the business of processing and selling fish products. They received an order from Kroger in Nashville, Tennessee f.o.b. Grand Haven. One carrier delivered the fish to Chicago and another picked them up and delivered them to Tennessee. The fish were spoiled during shipment and caused death when eaten. Plaintiff sued the carriers and Kroger for damages resulting from adverse publicity. Only the carriers appealed and the court upheld jurisdiction.
“These defendants are in the business of carrying goods in interstate commerce. It is reasonable to assume that they solicit and hopefully anticipate such business. They are in the position of being able to protect themselves from the consequences of their own derelictions . the very nature of the business of these defendants creates the necessary minimum contacts with those states which produce the products that enter interstate commerce.”
Other language of interest to our present case:
“The realities of modern commercial transactions dictate that modern concepts of jurisdiction be considered for the pitrpose of enlightened handling of disputes arising from modern conditions and transactions. Shall we hold that there can only be fair play and substantial justice where the law provides that all those who do business with these defendants must go to those states wherein they are doing business for adjudication of their grievances rather than to hold that the forum of justice may be that state where tortious consequences occur? To ask the question is to answer it. The court finds nothing offensive to the concept of fair play and justice in holding that the claimant may resort to the forum where the consequences of an act occur.” (Emphasis added.)
11) Dawkins v. White Products Corp. of Middleville, Mich., 317 F.Supp. 53, 56-57 (N.D.Miss.E.D.1970). It was no violation of due process to find jurisdiction where defendant’s sole connection with a water heater that exploded in plaintiff’s Mississippi cafe was that he had manufactured the thermostat which was installed in the water heater. The heater was not moved into Mississippi by either defendant nor sold nor delivered by either defendant to anyone in Mississippi. Jurisdiction was said to be permitted under due process because the heater exploded in Mississippi.
The federal court was surprised to find that the Mississippi Supreme Court had failed to extend the state statute to its apparent full extent and encompass due process in its entirety.
Quoting from Easterling v. Volkswagen of America, Inc., 308 F.Supp. 966, 977 (S.D.Miss.1969) the court said:
“Either the jurisdictional arm of section 1437 as amended is not as long as it appears in its sleeve or the Mississippi Supreme Court has shortened it by judicial surgery to a length shorter than the permissible constitutional reach.”
12) Duple Motor Bodies Ltd. v. Hollingsworth, 417 F.2d 231, 235 (9th Cir. 1969). The court was faced with a situation where a plaintiff domiciled in Hawaii sued an English defendant for injury resulting from the defective manufacture of a coach body built by defendant. An order for some coaches originated in Hawaii and was placed by a tour lines company with a motor car franchise in Hawaii. This Hawaiian motor car company forwarded the order to an English motor car company who manufactured the chasis and sent it to defendant appellant. Defendant designed and manufactured the coach bodies, placed them on the chasis, painted them, and sent the completed bus back to the English motor company which in turn shipped it to the Hawaiian franchised company. They sold it to the tour lines.
Jurisdiction over the defendant was upheld on language pertinent to the case at hand:
“In our judgment, the presence of Duple’s coach bodies in Hawaii, brought *716 about by Duple’s (defendant) sale to Vauxhall (English Motor Co.) with knowledge that the product was destined for Hawaii, was sufficient contact with Hawaii to meet the requirements of due process.
“We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade.”
13) Eyerly Aircraft Co. v. Killian, 414 F.2d 591, 597 (5 Cir. 1969). The defendant nonresident manufacturer had twenty years previous to the accident, sold an amusement ride to a Chicago Amusement Company, which in turn sold it to a'side show. For several years this machine toured the country and ultimately arrived in Texas where the injury occurred. There was nothing in the record to indicate that defendant saw the ride after it shipped it to Chicago but it was established that defendant contemplated that the ride would travel from state to state. The court found other contacts with Texas by defendant but pointed out that such contacts were not necessary for finding jurisdiction and that plaintiff’s cause of action did not arise because of these additional contacts. 414 F.2d at 595. The court said:
“ . . . we do not mean to imply that the commission of a single tort without further contacts in the state would not be sufficient to satisfy due process. Where a nonresident corporation engages in a single isolated transaction in a state and a tort claim arises out of that activity, the state may assert jurisdiction over the nonresident corporation without contravening due process.”
14) Waukesha Building Corporation v. Jameson, 246 F.Supp. 183, 189 (W.D.Ark.1965). A set of valves used in a heating and air-conditioning unit were shipped to a motor inn iti Arkansas. The valves were defective and suit followed. Although there were additional contacts, the court indicated that this single shipment of valves should be sufficient to meet the minimum contacts requirements of due process.
“ . . . Suffice it to say that the minimum contacts requirement in the above situation would be satisfied by virtue of Erie’s contracting to supply the first set of valves and its shipment directly to the job site. This single transaction is sufficient under the McGee case to render it subject to the jurisdiction of the courts of this State with respect to any controversy growing out of those goods.”
15) Continental Oil Company v. Atwood & Morrill Company, 265 F.Supp. 692, 697 (D.C.Mont.1967). Plaintiff had ordered a valve from defendant. The valve was placed by plaintiff on his gasoline manufacturing and processing machine. The valve was defective and an explosion occurred. Plaintiff sued defendant whose only contact with the forum state was the shipment of the valves in question. In upholding jurisdiction, the court quoted approvingly from Hearne v. Dow-Badische Chemical Co., 224 F.Supp. 90, 99-100 (S.D.Tex.1963):
“I feel the State of Texas has a special interest in seeing that products delivered within its borders, which are to be utilized in such a manner as to cause great hazard if negligently manufactured, are sound and to this end is interested in providing a forum where actions may be brought to compensate its injured residents and thus encourage a high standard of care on the part of the manufacturers.”